**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*FILED*

JUL 1 4 2005

RONALD A. GUZMAN, JUDGE
UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 05 C 4064 |
| | ) | |
| v. | ) | Judge Guzman |
| | ) | |
| COLUMBIA HOUSE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## STIPULATED JUDGMENT AND ORDER FOR PERMANENT INJUNCTION

Plaintiff, the United States of America, acting upon notification and authorization to the

Attorney General by the Federal Trade Commission ("FTC" or the "Commission"), has

commenced this action by filing the complaint herein, and Defendant has been served with the

summons and the complaint. The parties, represented by the attorneys whose names appear

hereafter, have agreed to settlement of this action without adjudication of any issue of fact or law,

and without Defendant admitting liability for any of the violations alleged in the complaint.

THEREFORE, on the joint motion of the parties, it is hereby ORDERED, ADJUDGED

AND DECREED as follows:

### FINDINGS

1. This Court has jurisdiction over the subject matter and the parties pursuant to

28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and 15 U.S.C. §§ 45(m)(1)(A), 53(b), and 56(a).

2. Venue in the Northern District of Illinois is proper.

3. The activities of Defendant are in or affecting commerce, as defined in Section 4

Page 1 of 11

of the FTC Act, 15 U.S.C. § 44.

4.       The complaint states a claim upon which relief may be granted against Defendant under Sections 5(a), 5(m)(1)(A), and 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 45(m)(1)(A), and 53(b).

5.       Defendant has entered into this Stipulated Judgment and Order for Permanent Injunction ("Order") freely and without coercion. Defendant further acknowledges that it has read the provisions of this Order and is prepared to abide by them.

6.       Defendant hereby waives all rights to appeal or otherwise challenge or contest the validity of this Order.

7.       Defendant has agreed that this Order does not entitle Defendant to seek or to obtain attorneys' fees as a prevailing party under the Equal Access to Justice Act, 28 U.S.C. § 2412, and Defendant further waives any rights to attorneys' fees that may arise under said provision of law.

8.       By entering into this stipulation, Defendant does not admit any of the allegations set forth in the complaint, other than the jurisdictional facts. Defendant expressly denies all other allegations in the complaint.

9.       Entry of this Order is in the public interest.

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

1.       "Asset" means any legal or equitable interest in, or right or claim to, any real and personal property, including without limitation, chattels, goods, instruments, equipment, fixtures, general intangibles, leaseholds, mail or other deliveries, inventory, checks, notes, accounts,

credits, contracts, receivables, shares of stock, and all cash, wherever located.

    2.    "Defendant" means "The Columbia House Company," a New York general partnership.

    3.    "Telemarketing Sales Rule" or "Rule" means the FTC Rule entitled "Telemarketing Sales Rule," 16 C.F.R. § 310, attached hereto as Appendix A or as may hereafter be amended.

    4.    "Customer" means any person who is or may be required to pay for goods or services offered through telemarketing.

    5.    "Telemarketing" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. The term does not include the solicitation of sales through the mailing of a catalog which: contains a written description or illustration of the goods or services offered for sale; includes the business address of the seller; includes multiple pages of written material or illustrations; and has been issued not less frequently than once a year, when the person making the solicitation does not solicit customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation. For purposes of the previous sentence, the term "further solicitation" does not include providing the customer with information about, or attempting to sell, any other item included in the same catalog which prompted the customer's call or in a substantially similar catalog.

    6.    "Seller" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in

exchange for consideration, whether or not such person is under the jurisdiction of the Federal Trade Commission.

7.     "Telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

8.     "Established business relationship" means a relationship between the seller and a person based on: (a) the person's purchase, rental, or lease of the seller's goods or services or a financial transaction between the person and seller, within the eighteen months immediately preceding the date of the telemarketing call; or (b) the person's inquiry or application regarding a product or service offered by the seller, within the three months immediately preceding the date of a telemarketing call.

9.     "Representatives" means Defendant's successors, assigns, officers, agents, directors, servants, employees, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise.

10.     "Person" means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

11.     "Outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

12.     "National Do Not Call Registry" means the National Do Not Call Registry, which is the 'do-not-call' registry maintained by the Federal Trade Commission pursuant to 16 C.F.R. § 310.4(b)(1)(iii)(B).

## ORDER

### I. PROHIBITION AGAINST ABUSIVE TELEMARKETING PRACTICES

**IT IS ORDERED** that, in connection with telemarketing, Defendant and its

Representatives are hereby permanently restrained and enjoined from engaging in, or causing

other persons to engage in, violations of the Telemarketing Sales Rule, including but not limited

to:

A.      Initiating any outbound telephone call to a person when that person has previously

stated that he or she does not wish to receive an outbound telephone call made by or on behalf of

the seller whose goods or services are being offered; or

B.      Initiating any outbound telephone call to a person's telephone number on the

National Do Not Call Registry of persons who do not wish to receive outbound telephone calls to

induce the purchase of goods or services unless the seller proves:

> 1.      The seller has obtained the express agreement, in writing, of such person
>
> to place calls to that person.  Such written agreement shall clearly evidence such
>
> person's authorization that calls made by or on behalf of a specific party may be
>
> placed to that person, and shall include the telephone number to which the calls
>
> may be placed and the signature of that person; or
>
> 2.      The seller has an established business relationship with such person and
>
> that person has not previously stated that he or she does not wish to receive
>
> outbound telephone calls made by or on behalf of the seller.

*Provided, however,* that if the Commission promulgates rules that modify or supersede

the Telemarketing Sales Rule, in whole or part, Defendant shall comply fully and completely

with all applicable requirements thereof, on and after the effective date of any such rules.

## II. CIVIL PENALTY

**IT IS FURTHER ORDERED** that judgment in the amount of Three Hundred Thousand Dollars ($300,000.00) is hereby entered against Defendant, as a civil penalty, pursuant to Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

A.      Prior to or concurrently with its execution of this Order, Defendant shall turn over the full amount of the civil penalty to its attorney, who shall hold the entire sum for no purpose other than payment to the Treasurer of the United States after entry of this Order by the Court. Within five (5) days of receipt of notice of the entry of this Order, Defendant's attorney shall transfer the civil penalty payment in the form of a wire transfer or certified or cashier's check made payable to the Treasurer of the United States. The check or written confirmation of the wire transfer shall be delivered to the Director, Office of Consumer Litigation, U.S. Department of Justice Civil Division, P.O. Box 386, Washington, D.C. 20044. The cover letter accompanying the check shall include the title of this litigation and a reference to DJ# 102-3235.

B.      In the event of default on the payment required to be made by this Section, the entire unpaid civil penalty, together with interest computed under 28 U.S.C. § 1961 -- accrued from the date of default until the date of payment -- shall be immediately due and payable. Defendant agrees that, in such event, the facts as alleged in the complaint filed in this action shall be taken as true in any subsequent litigation filed by Plaintiff or the Commission to enforce their rights pursuant to this Order, including but not limited to a nondischargeability complaint in any subsequent bankruptcy proceeding.

C.      Defendant shall cooperate fully with Plaintiff and the Commission and their

Page 6 of 11

agents in all attempts to collect the amount due pursuant to this Section if Defendant fails to pay

fully the amount due at the time specified herein. In such an event, Defendant agrees to provide

Plaintiff and the Commission with its federal and state tax returns for the preceding two years,

and to complete new standard-form financial disclosure forms fully and accurately within ten

(10) business days of receiving a request from Plaintiff or the Commission to do so. Defendant

further authorizes Plaintiff and the Commission to verify all information provided on their

financial disclosure forms with all appropriate third parties, including, but not limited to,

financial institutions.

       D.      In accordance with 31 U.S.C. § 7701, Defendant is hereby required, unless it has

done so already, to furnish to Plaintiff and the FTC its taxpayer identifying number (social

security number or employer identification number) which shall be used for purposes of

collecting and reporting on any delinquent amount arising out of Defendant's relationship with

the government.

## III. ACCURACY OF FINANCIAL INFORMATION

     **IT IS FURTHER ORDERED** that Plaintiff's and the Commission's agreement to, and

the Court's approval of, this Order is expressly premised upon the truthfulness, accuracy, and

completeness of the document headed "Revenue Data from Columbia House Telemarketing

Campaigns from October 2003 through March 2004" (Document No. CHC-05283) (hereinafter

"Revenue Data") provided by Defendant and its counsel to the Plaintiff. If, upon motion by the

Plaintiff, this Court finds that this Revenue Data contained any material misrepresentations or

omissions, then the Plaintiff may request that this Order be reopened for the purpose of requiring

additional civil penalties from Defendant for making such a misrepresentation or omission;

*provided, however,* that in all other respects, this Order shall remain in full force and effect unless otherwise ordered by this Court; and *provided further,* that proceedings instituted under this Section are in addition to, and not in lieu of, any other civil or criminal remedies available by law. Solely for the purposes of reopening or enforcing this Section, Defendant waives any right to contest any of the allegations set forth in the complaint filed in this matter.

## IV. RECORD KEEPING PROVISIONS

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Order, Defendant, and its successors and assigns, shall maintain and make available to the Plaintiff or Commission, within thirty (30) days of the receipt of a written request, business records demonstrating compliance with the terms and provisions of this Order.

## V. DISTRIBUTION OF ORDER BY DEFENDANT AND ACKNOWLEDGMENTS OF RECEIPT

**IT IS FURTHER ORDERED** that Defendant, and its successors and assigns, shall within thirty (30) days of the entry of this Order, provide a copy of this Order including Appendix A to all of its owners, principals, members, officers, and directors, as well as managers, agents, servants, employees, and attorneys having decision-making authority with respect to the subject matter of this Order; secure from each such person a signed statement acknowledging receipt of a copy of this Order; and shall, within ten (10) days of complying with this Section, file an affidavit with the Court and serve the Commission, by mailing a copy thereof, to the Director, Federal Trade Commission, Midwest Region, 55 East Monroe Street, Suite 1860, Chicago, Illinois 60603, setting forth the fact and manner of their compliance, including the name and title of each person to whom a copy of the Order has been provided.

## VI. NOTIFICATION OF BUSINESS CHANGES

**IT IS FURTHER ORDERED** that Defendant, and its successors and assigns, shall notify the Director, Federal Trade Commission, Midwest Region, 55 East Monroe Street, Suite 1860, Chicago, Illinois 60603, at least thirty (30) days prior to any change in Defendant's business, including, but not limited to, merger, incorporation, dissolution, assignment, and sale, which results in the emergence of a successor corporation, the creation or dissolution of a subsidiary or parent, or any other change, which may affect Defendant's obligations under this Order.

## VII. FEES AND COSTS

**IT IS FURTHER ORDERED** that each party to this Order hereby agrees to bear its own costs and attorneys' fees incurred in connection with this action.

## VIII. SEVERABILITY

**IT IS FURTHER ORDERED** that the provisions of this Order are separate and severable from one another. If any provision is stayed or determined to be invalid, the remaining provisions shall remain in full force and effect.

## IX. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification and enforcement of this Order.

## X. COMPLETE SETTLEMENT

The parties, by their respective counsel, hereby consent to entry of the foregoing Order, which shall constitute a final judgment and order in this matter. The parties further stipulate and agree that the entry of the foregoing Order shall constitute a full, complete and final settlement of this action.

Page 9 of 11

FOR THE PLAINTIFF
PETER D. KEISLER
Assistant Attorney General
Civil Division
U.S. Department of Justice

PATRICK FITZGERALD
United States Attorney

*Thomas Wahl*

Assistant U.S. Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300 [Voice]
(312) 353-2067 [Fax]

EUGENE M. THIROLF
Director
Office of Consumer Litigation

*Elizabeth Stein*

ELIZABETH STEIN
Trial Attorney
Office of Consumer Litigation
U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
(202) 307-0486 [Voice]
(202) 514-8742 [Fax]

FOR THE FEDERAL TRADE COMMISSION:

*C. Steven Baker*

C. STEVEN BAKER
Director, Midwest Region

*Theresa M. McGrew*

TODD M. KOSSOW
THERESA M. McGREW
Attorneys, Midwest Region
55 East Monroe, Suite 1860
Chicago, Illinois 60603

Page 10 of 11

FOR THE DEFENDANT

TERRY MACKO
Senior Vice President, New Member Marketing
The Columbia House Company

LEWIS ROSE, ESQ.
Collier Shannon Scott, PLLC
3050 K Street, N.W., Suite 400
Washington, D.C. 2007

**SO ORDERED** this _14th_ day of _July_, 2005

UNITED STATES DISTRICT JUDGE

## REASONS FOR SETTLEMENT

This statement accompanies the final order executed by defendant The Columbia House Company ("Columbia House"). The final order enjoins Columbia House from violating the Telemarketing Sales Rule ("Rule"), 16 C.F.R. Part 310, including the National Do Not Call Registry provisions, and it requires payment of a $300,000 civil penalty.

Pursuant to Section 5(m)(3) of the Federal Trade Commission Act, as amended, 15 U.S.C. § 45(m)(3), the Commission hereby sets forth its reasons for settlement by entry of a Stipulated Judgment and Order for Permanent Injunction ("final order"):

On the basis of the allegations contained in the complaint, the Commission believes that the payment of $300,000 in civil penalties by Columbia House constitutes the appropriate amount on which to base the settlement. The provisions enjoining defendant from failing to comply with the Rule, including its various Do Not Call requirements, should assure defendant's future compliance with the law. With the entry of the final order, the time and expense of litigation will be avoided.

For the foregoing reasons, the Commission believes that the settlement by entry of the attached final order is justified and well within the public interest.



Code of Federal Regulations

# 16

**Parts 0 to 999**
Revised as of January 1, 2004

# Commercial Practices

Containing a codification of documents
of general applicability and future effect

As of January 1, 2004

*With Ancillaries*

Published by
Office of the Federal Register
National Archives and Records
Administration

A Special Edition of the Federal Register

# PART 310—TELEMARKETING SALES RULE

Sec.
310.1  Scope of regulations in this part.
310.2  Definitions.
310.3  Deceptive telemarketing acts or practices.
310.4  Abusive telemarketing acts or practices.
310.5  Recordkeeping requirements.
310.6  Exemptions.
310.7  Actions by states and private persons.
310.8  Fee for access to "do-not-call" registry.
310.9  Severability.

AUTHORITY: 15 U.S.C. 6101-6108.

SOURCE: 68 FR 4669, Jan. 29, 2003, unless otherwise noted.

## § 310.1  Scope of regulations in this part.

This part implements the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101-6108, as amended.

## § 310.2  Definitions.

(a) *Acquirer* means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization that operates or licenses a credit card system to authorize merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

(b) *Attorney General* means the chief legal officer of a state.

(c) *Billing information* means any data that enables any person to access a customer's or donor's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

374

(d) *Caller identification service* means a service that allows a telephone subscriber to have the telephone number, and, where available, name of the calling party transmitted contemporaneously with the telephone call, and displayed on a device in or connected to the subscriber's telephone.

(e) *Cardholder* means a person to whom a credit card is issued or who is authorized to use a credit card on behalf of or in addition to the person to whom the credit card is issued.

(f) *Charitable contribution* means any donation or gift of money or any other thing of value.

(g) *Commission* means the Federal Trade Commission.

(h) *Credit* means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

(i) *Credit card* means any card, plate, coupon book, or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.

(j) *Credit card sales draft* means any record or evidence of a credit card transaction.

(k) *Credit card system* means any method or procedure used to process credit card transactions involving credit cards issued or licensed by the operator of that system.

(l) *Customer* means any person who is or may be required to pay for goods or services offered through telemarketing.

(m) *Donor* means any person solicited to make a charitable contribution.

(n) *Established business relationship* means a relationship between a seller and a consumer based on:

(1) the consumer's purchase, rental, or lease of the seller's goods or services or a financial transaction between the consumer and seller, within the eighteen (18) months immediately preceding the date of a telemarketing call; or

(2) the consumer's inquiry or application regarding a product or service offered by the seller, within the three (3) months immediately preceding the date of a telemarketing call.

(o) *Free-to-pay conversion* means, in an offer or agreement to sell or provide any goods or services, a provision under which a customer receives a product or service for free for an initial period and will incur an obligation to pay for the product or service if he or she does not take affirmative action to cancel before the end of that period.

(p) *Investment opportunity* means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

(q) *Material* means likely to affect a person's choice of, or conduct regarding, goods or services or a charitable contribution.

(r) *Merchant* means a person who is authorized under a written contract with an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(s) *Merchant agreement* means a written contract between a merchant and an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(t) *Negative option feature* means, in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.

(u) *Outbound telephone call* means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

(v) *Person* means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

(w) *Preacquired account information* means any information that enables a seller or telemarketer to cause a charge to be placed against a customer's or donor's account without obtaining the account number directly from the customer or donor during the telemarketing transaction pursuant to which the account will be charged.

(x) *Prize* means anything offered, or purportedly offered, and given, or purportedly given, to a person by chance.

§310.3

For purposes of this definition, chance exists if a person is guaranteed to receive an item and, at the time of the offer or purported offer, the telemarketer does not identify the specific item that the person will receive.

(y) *Prize promotion* means:

(1) A sweepstakes or other game of chance; or

(2) An oral or written express or implied representation that a person has won, has been selected to receive, or may be eligible to receive a prize or purported prize.

(z) *Seller* means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.

(aa) *State* means any state of the United States, the District of Columbia, Puerto Rico, the Northern Mariana Islands, and any territory or possession of the United States.

(bb) *Telemarketer* means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

(cc) *Telemarketing* means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. The term does not include the solicitation of sales through the mailing of a catalog which: contains a written description or illustration of the goods or services offered for sale; includes the business address of the seller; includes multiple pages of written material or illustrations; and has been issued not less frequently than once a year, when the person making the solicitation does not solicit customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation. For purposes of the previous sentence, the term "further solicitation" does not include providing the customer with information about, or attempting to sell, any other item included in the same catalog which prompted the customer's call or in a substantially similar catalog.

(dd) *Upselling* means soliciting the purchase of goods or services following an initial transaction during a single telephone call. The upsell is a separate telemarketing transaction, not a continuation of the initial transaction. An "external upsell" is a solicitation made by or on behalf of a seller different from the seller in the initial transaction, regardless of whether the initial transaction and the subsequent solicitation are made by the same telemarketer. An "internal upsell" is a solicitation made by or on behalf of the same seller as in the initial transaction, regardless of whether the initial transaction and subsequent solicitation are made by the same telemarketer.

§310.3 Deceptive telemarketing acts or practices.

(a) *Prohibited deceptive telemarketing acts or practices.* It is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Before a customer pays[1] for goods or services offered, failing to disclose truthfully, in a clear and conspicuous manner, the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer;[2]

(ii) All material restrictions, limitations, or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer;

(iii) If the seller has a policy of not making refunds, cancellations, exchanges, or repurchases, a statement informing the customer that this is the

[1] When a seller or telemarketer uses, or directs a customer to use, a courier to transport payment, the seller or telemarketer must make the disclosures required by §310.3(a)(1) before sending a courier to pick up payment or authorization for payment, or directing a customer to have a courier pick up payment or authorization for payment.

[2] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR 226, compliance with the disclosure requirements under the Truth in Lending Act and Regulation Z shall constitute compliance with §310.3(a)(1)(i) of this Rule.

seller's policy; or, if the seller or telemarketer makes a representation about a refund, cancellation, exchange, or repurchase policy, a statement of all material terms and conditions of such policy;

(iv) In any prize promotion, the odds of being able to receive the prize, and, if the odds are not calculable in advance, the factors used in calculating the odds; that no purchase or payment is required to win a prize or to participate in a prize promotion and that any purchase or payment will not increase the person's chances of winning; and the no-purchase/no-payment method of participating in the prize promotion with either instructions on how to participate or an address or local or toll-free telephone number to which customers may write or call for information on how to participate;

(v) All material costs or conditions to receive or redeem a prize that is the subject of the prize promotion;

(vi) In the sale of any goods or services represented to protect, insure, or otherwise limit a customer's liability in the event of unauthorized use of the customer's credit card, the limits on a cardholder's liability for unauthorized use of a credit card pursuant to 15 U.S.C. 1643; and

(vii) If the offer includes a negative option feature, all material terms and conditions of the negative option feature, including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s).

(2) Misrepresenting, directly or by implication, in the sale of goods or services any of the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of a sales offer;

(ii) Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer;

(iii) Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer;

(iv) Any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

(v) Any material aspect of a prize promotion including, but not limited to, the odds of being able to receive a prize, the nature or value of a prize, or that a purchase or payment is required to win a prize or to participate in a prize promotion;

(vi) Any material aspect of an investment opportunity including, but not limited to, risk, liquidity, earnings potential, or profitability;

(vii) A seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity;

(viii) That any customer needs offered goods or services to provide protections a customer already has pursuant to 15 U.S.C. 1643; or

(ix) Any material aspect of a negative option feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s).

(3) Causing billing information to be submitted for payment, or collecting or attempting to collect payment for goods or services or a charitable contribution, directly or indirectly, without the customer's or donor's express verifiable authorization, except when the method of payment used is a credit card subject to protections of the Truth in Lending Act and Regulation Z,[3] or a debit card subject to the protections of the Electronic Fund Transfer Act and Regulation E.[4] Such authorization shall be deemed verifiable if any of the following means is employed:

---

[3]Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR part 226.
[4]Electronic Fund Transfer Act, 15 U.S.C. 1693 *et seq.*, and Regulation E, 12 CFR part 205.

Case: 1:05-cv-04064 Document #: 5 Filed: 07/14/05 Page 18 of 29 PageID #:29

(i) Express written authorization by the customer or donor, which includes the customer's or donor's signature;[5]

(ii) Express oral authorization which is audio-recorded and made available upon request to the customer or donor, and the customer's or donor's bank or other billing entity, and which evidences clearly both the customer's or donor's authorization of payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction and the customer's or donor's receipt of all of the following information:

(A) The number of debits, charges, or payments (if more than one);

(B) The date(s) the debit(s), charge(s), or payment(s) will be submitted for payment;

(C) The amount(s) of the debit(s), charge(s), or payment(s);

(D) The customer's or donor's name;

(E) The customer's or donor's billing information, identified with sufficient specificity such that the customer or donor understands what account will be used to collect payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction;

(F) A telephone number for customer or donor inquiry that is answered during normal business hours; and

(G) The date of the customer's or donor's oral authorization; or

(iii) Written confirmation of the transaction, identified in a clear and conspicuous manner as such on the outside of the envelope, sent to the customer or donor via first class mail prior to the submission for payment of the customer's or donor's billing information, and that includes all of the information contained in §§ 310.3(a)(3)(ii)(A)-(G) and a clear and conspicuous statement of the procedures by which the customer or donor can obtain a refund from the seller or telemarketer or charitable organization in the event the confirmation is inaccurate; *provided*, however, that this means of authorization shall not be

deemed verifiable in instances in which goods or services are offered in a transaction involving a free-to-pay conversion and preacquired account information.

(4) Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution.

(b) *Assisting and facilitating.* It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4 of this Rule.

(c) *Credit card laundering.* Except as expressly permitted by the applicable credit card system, it is a deceptive telemarketing act or practice and a violation of this Rule for:

(1) A merchant to present to or deposit into, or cause another to present to or deposit into, the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant;

(2) Any person to employ, solicit, or otherwise cause a merchant, or an employee, representative, or agent of the merchant, to present to or deposit into the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant; or

(3) Any person to obtain access to the credit card system through the use of a business relationship or an affiliation with a merchant, when such access is not authorized by the merchant agreement or the applicable credit card system.

(d) *Prohibited deceptive acts or practices in the solicitation of charitable contributions.* It is a fraudulent charitable solicitation, a deceptive telemarketing act or practice, and a violation of this Rule for any telemarketer soliciting charitable contributions to misrepresent, directly or by implication, any of the following material information:

[5] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

(1) The nature, purpose, or mission of any entity on behalf of which a charitable contribution is being requested;

(2) That any charitable contribution is tax deductible in whole or in part;

(3) The purpose for which any charitable contribution will be used;

(4) The percentage or amount of any charitable contribution that will go to a charitable organization or to any particular charitable program;

(5) Any material aspect of a prize promotion including, but not limited to: the odds of being able to receive a prize; the nature or value of a prize; or that a charitable contribution is required to win a prize or to participate in a prize promotion; or

(6) A charitable organization's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity.

### § 310.4 Abusive telemarketing acts or practices.

(a) *Abusive conduct generally.* It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Threats, intimidation, or the use of profane or obscene language;

(2) Requesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating until:

(i) The time frame in which the seller has represented all of the goods or services will be provided to that person has expired; and

(ii) The seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved. Nothing in this Rule should be construed to affect the requirement in the Fair Credit Reporting Act, 15 U.S.C. 1681, that a consumer report may only be obtained for a specified permissible purpose;

(3) Requesting or receiving payment of any fee or consideration from a person for goods or services represented to recover or otherwise assist in the re-

turn of money or any other item of value paid for by, or promised to, that person in a previous telemarketing transaction, until seven (7) business days after such money or other item is delivered to that person. This provision shall not apply to goods or services provided to a person by a licensed attorney;

(4) Requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person;

(5) Disclosing or receiving, for consideration, unencrypted consumer account numbers for use in telemarketing; *provided,* however, that this paragraph shall not apply to the disclosure or receipt of a customer's or donor's billing information to process a payment for goods or services or a charitable contribution pursuant to a transaction;

(6) Causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the customer or donor. In any telemarketing transaction, the seller or telemarketer must obtain the express informed consent of the customer or donor to be charged for the goods or services or charitable contribution and to be charged using the identified account. In any telemarketing transaction involving preacquired account information, the requirements in paragraphs (a)(6)(i) through (ii) of this section must be met to evidence express informed consent.

(i) In any telemarketing transaction involving preacquired account information and a free-to-pay conversion feature, the seller or telemarketer must:

(A) obtain from the customer, at a minimum, the last four (4) digits of the account number to be charged;

(B) obtain from the customer his or her express agreement to be charged for the goods or services and to be charged using the account number pursuant to paragraph (a)(6)(i)(A) of this section; and,

(C) make and maintain an audio recording of the entire telemarketing transaction.

(ii) In any other telemarketing transaction involving preacquired account information not described in paragraph (a)(6)(i) of this section, the seller or telemarketer must:

(A) at a minimum, identify the account to be charged with sufficient specificity for the customer or donor to understand what account will be charged; and

(B) obtain from the customer or donor his or her express agreement to be charged for the goods or services and to be charged using the account number identified pursuant to paragraph (a)(6)(ii)(A) of this section; or

(7) Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; *provided* that it shall not be a violation to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller or charitable organization on behalf of which a telemarketing call is placed, and the seller's or charitable organization's customer or donor service telephone number, which is answered during regular business hours.

(b) *Pattern of calls.* (1) It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the following conduct:

(i) Causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number;

(ii) Denying or interfering in any way, directly or indirectly, with a person's right to be placed on any registry of names and/or telephone numbers of persons who do not wish to receive outbound telephone calls established to comply with § 310.4(b)(1)(iii);

(iii) Initiating any outbound telephone call to a person when:

(A) that person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered or made on behalf of the charitable organization for which a charitable contribution is being solicited; or

(B) that person's telephone number is on the "do-not-call" registry, maintained by the Commission, of persons who do not wish to receive outbound telephone calls to induce the purchase of goods or services unless the seller

(i) has obtained the express agreement, in writing, of such person to place calls to that person. Such written agreement shall clearly evidence such person's authorization that calls made by or on behalf of a specific party may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature [6] of that person; or

(ii) has an established business relationship with such person, and that person has not stated that he or she does not wish to receive outbound telephone calls under paragraph (b)(1)(iii)(A) of this section; or

(iv) Abandoning any outbound telephone call. An outbound telephone call is "abandoned" under this section if a person answers it and the telemarketer does not connect the call to a sales representative within two (2) seconds of the person's completed greeting.

(2) It is an abusive telemarketing act or practice and a violation of this Rule for any person to sell, rent, lease, purchase, or use any list established to comply with § 310.4(b)(1)(iii)(A), or maintained by the Commission pursuant to § 310.4(b)(1)(iii)(B), for any purpose except compliance with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on such lists.

(3) A seller or telemarketer will not be liable for violating § 310.4(b)(1)(ii) and (iii) if it can demonstrate that, as part of the seller's or telemarketer's routine business practice:

(i) It has established and implemented written procedures to comply with § 310.4(b)(1)(ii) and (iii);

(ii) It has trained its personnel, and any entity assisting in its compliance,

---

[6] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

in the procedures established pursuant to § 310.4(b)(3)(i);

(iii) The seller, or a telemarketer or another person acting on behalf of the seller or charitable organization, has maintained and recorded a list of telephone numbers the seller or charitable organization may not contact, in compliance with § 310.4(b)(1)(iii)(A);

(iv) The seller or a telemarketer uses a process to prevent telemarketing to any telephone number on any list established pursuant to §§ 310.4(b)(3)(iii) or 310.4(b)(1)(iii)(B), employing a version of the "do-not-call" registry obtained from the Commission no more than three (3) months prior to the date any call is made, and maintains records documenting this process;

(v) The seller or a telemarketer or another person acting on behalf of the seller or charitable organization, monitors and enforces compliance with the procedures established pursuant to § 310.4(b)(3)(i); and

(vi) Any subsequent call otherwise violating § 310.4(b)(1)(ii) or (iii) is the result of error.

(4) A seller or telemarketer will not be liable for violating 310.4(b)(1)(iv) if:

(i) the seller or telemarketer employs technology that ensures abandonment of no more than three (3) percent of all calls answered by a person, measured per day per calling campaign;

(ii) the seller or telemarketer, for each telemarketing call placed, allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call;

(iii) whenever a sales representative is not available to speak with the person answering the call within two (2) seconds after the person's completed greeting, the seller or telemarketer promptly plays a recorded message that states the name and telephone number of the seller on whose behalf the call was placed[7]; and

(iv) the seller or telemarketer, in accordance with § 310.5(b)-(d), retains records establishing compliance with § 310.4(b)(4)(i)-(iii).

(c) *Calling time restrictions.* Without the prior consent of a person, it is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in outbound telephone calls to a person's residence at any time other than between 8:00 a.m. and 9:00 p.m. local time at the called person's location.

(d) *Required oral disclosures in the sale of goods or services.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer in an outbound telephone call or internal or external upsell to induce the purchase of goods or services to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the seller;

(2) That the purpose of the call is to sell goods or services;

(3) The nature of the goods or services; and

(4) That no purchase or payment is necessary to be able to win a prize or participate in a prize promotion. If a prize promotion is offered and that any purchase or payment will not increase the person's chances of winning. This disclosure must be made before or in conjunction with the description of the prize to the person called. If requested by that person, the telemarketer must disclose the no-purchase/no-payment entry method for the prize promotion; *provided,* however, that, in any internal upsell for the sale of goods or services, the seller or telemarketer must provide the disclosures listed in this section only to the extent that the information in the upsell differs from the disclosures provided in the initial telemarketing transaction.

(e) *Required oral disclosures in charitable solicitations.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer, in an outbound telephone call to induce a charitable contribution, to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the charitable organization on behalf of which the request is being made; and

---

[7] This provision does not affect any seller's or telemarketer's obligation to comply with relevant state and federal laws, including but not limited to the TCPA, 47 U.S.C. 227, and 47 CFR part 64.1200.

(2) That the purpose of the call is to solicit a charitable contribution.

### § 310.5  Recordkeeping requirements.

(a) Any seller or telemarketer shall keep, for a period of 24 months from the date the record is produced, the following records relating to its telemarketing activities:

(1) All substantially different advertising, brochures, telemarketing scripts, and promotional materials;

(2) The name and last known address of each prize recipient and the prize awarded for prizes that are represented, directly or by implication, to have a value of $25.00 or more;

(3) The name and last known address of each customer, the goods or services purchased, the date such goods or services were shipped or provided, and the amount paid by the customer for the goods or services;[3]

(4) The name, any fictitious name used, the last known home address and telephone number, and the job title(s) for all current and former employees directly involved in telephone sales or solicitations; *provided,* however, that if the seller or telemarketer permits fictitious names to be used by employees, each fictitious name must be traceable to only one specific employee; and

(5) All verifiable authorizations or records of express informed consent or express agreement required to be provided or received under this Rule.

(b) A seller or telemarketer may keep the records required by § 310.5(a) in any form, and in the same manner, format, or place as they keep such records in the ordinary course of business. Failure to keep all records required by § 310.5(a) shall be a violation of this Rule.

(c) The seller and the telemarketer calling on behalf of the seller may, by written agreement, allocate responsibility between themselves for the recordkeeping required by this Section. When a seller and telemarketer have entered into such an agreement, the terms of that agreement shall govern, and the seller or telemarketer, as the case may be, need not keep records that duplicate those of the other. If the agreement is unclear as to who must maintain any required record(s), or if no such agreement exists, the seller shall be responsible for complying with §§ 310.5(a)(1)-(3) and (5); the telemarketer shall be responsible for complying with § 310.5(a)(4).

(d) In the event of any dissolution or termination of the seller's or telemarketer's business, the principal of that seller or telemarketer shall maintain all records as required under this Section. In the event of any sale, assignment, or other change in ownership of the seller's or telemarketer's business, the successor business shall maintain all records required under this Section.

### § 310.6  Exemptions.

(a) Solicitations to induce charitable contributions via outbound telephone calls are not covered by § 310.4(b)(1)(iii)(B) of this Rule.

(b) The following acts or practices are exempt from this Rule:

(1) The sale of pay-per-call services subject to the Commission's Rule entitled "Trade Regulation Rule Pursuant to the Telephone Disclosure and Dispute Resolution Act of 1992," 16 CFR Part 308, *provided,* however, that this exemption does not apply to the requirements of §§ 310.4(a)(1), (a)(7), (b), and (c);

(2) The sale of franchises subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures," ("Franchise Rule") 16 CFR Part 436, *provided,* however, that this exemption does not apply to the requirements of §§ 310.4(a)(1), (a)(7), (b), and (c);

(3) Telephone calls in which the sale of goods or services or charitable solicitation is not completed, and payment or authorization of payment is not required, until after a face-to-face sales or donation presentation by the seller or charitable organization, *provided,* however, that this exemption does not apply to the requirements of §§ 310.4(a)(1), (a)(7), (b), and (c);

---

[3] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.,* and Regulation Z, 12 CFR 226, compliance with the recordkeeping requirements under the Truth in Lending Act, and Regulation Z, shall constitute compliance with § 310.5(a)(3) of this Rule.

(4) Telephone calls initiated by a customer or donor that are not the result of any solicitation by a seller, charitable organization, or telemarketer, *provided*, however, that this exemption does not apply to any instances of upselling included in such telephone calls;

(5) Telephone calls initiated by a customer or donor in response to an advertisement through any medium, other than direct mail solicitation, *provided*, however, that this exemption does not apply to calls initiated by a customer or donor in response to an advertisement relating to investment opportunities, business opportunities other than business arrangements covered by the Franchise Rule, or advertisements involving goods or services described in §§310.3(a)(1)(vi) or 310.4(a)(2)-(4); or to any instances of upselling included in such telephone calls;

(6) Telephone calls initiated by a customer or donor in response to a direct mail solicitation, including solicitations via the U.S. Postal Service, facsimile transmission, electronic mail, and other similar methods of delivery in which a solicitation is directed to specific address(es) or person(s), that clearly, conspicuously, and truthfully discloses all material information listed in §310.3(a)(1) of this Rule, for any goods or services offered in the direct mail solicitation, and that contains no material misrepresentation regarding any item contained in §310.3(d) of this Rule for any requested charitable contribution; *provided*, however, that this exemption does not apply to calls initiated by a customer in response to a direct mail solicitation relating to prize promotions, investment opportunities, business arrangements other than business arrangements covered by the Franchise Rule, or goods or services described in §§310.3(a)(1)(vi) or 310.4(a)(2)-(4); or to any instances of upselling included in such telephone calls; and

(7) Telephone calls between a telemarketer and any business, except calls to induce the retail sale of nondurable office or cleaning supplies; *provided*, however, that §310.4(b)(1)(iii)(B) and §310.5 of this Rule shall not apply to sellers or telemarketers of nondurable office or cleaning supplies.

## §310.7 Actions by states and private persons.

(a) Any attorney general or other officer of a state authorized by the state to bring an action under the Telemarketing and Consumer Fraud and Abuse Prevention Act, and any private person who brings an action under that Act, shall serve written notice of its action on the Commission, if feasible, prior to its initiating an action under this Rule. The notice shall be sent to the Office of the Director, Bureau of Consumer Protection, Federal Trade Commission, Washington, D.C. 20580, and shall include a copy of the state's or private person's complaint and any other pleadings to be filed with the court. If prior notice is not feasible, the state or private person shall serve the Commission with the required notice immediately upon instituting its action.

(b) Nothing contained in this Section shall prohibit any attorney general or other authorized state official from proceeding in state court on the basis of an alleged violation of any civil or criminal statute of such state.

## §310.8 Fee for access to the National Do Not Call Registry.

(a) It is a violation of this Rule for any seller to initiate, or cause any telemarketer to initiate, an outbound telephone call to any person whose telephone number is within a given area code unless such seller, either directly or through another person, first has paid the annual fee, required by §310.8(c), for access to telephone numbers within that area code that are included in the National Do Not Call Registry maintained by the Commission under §310.4(b)(1)(iii)(B); *provided*, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§310.4(b)(1)(iii)(B)(*i*) or (*ii*), and the seller does not access the National Do Not Call Registry for any other purpose.

(b) It is a violation of this Rule for any telemarketer, on behalf of any seller, to initiate an outbound telephone call to any person whose telephone number is within a given area code unless that seller, either directly or

through another person, first has paid the annual fee, required by § 310.8(c), for access to the telephone numbers within that area code that are included in the National Do Not Call Registry; *provided*, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§ 310.4(b)(1)(iii)(B)(*i*) or (*ii*), and the seller does not access the National Do Not Call Registry for any other purpose.

(c) The annual fee, which must be paid by any person prior to obtaining access to the National Do Not Call Registry, is $25 per area code of data accessed, up to a maximum of $7,375; *provided*, however, that there shall be no charge for the first five area codes of data accessed by any person, and *provided further*, that there shall be no charge to any person engaging in or causing others to engage in outbound telephone calls to consumers and who is accessing the National Do Not Call Registry without being required under this Rule, 47 CFR 64.1200, or any other federal law. Any person accessing the National Do Not Call Registry may not participate in any arrangement to share the cost of accessing the registry, including any arrangement with any telemarketer or service provider to divide the costs to access the registry among various clients of that telemarketer or service provider.

(d) After a person, either directly or through another person, pays the fees set forth in § 310.8(c), the person will be provided a unique account number which will allow that person to access the registry data for the selected area codes at any time for twelve months following the first day of the month in which the person paid the fee ("the annual period"). To obtain access to additional area codes of data during the first six months of the annual period, the person must first pay $25 for each additional area code of data not initially selected. To obtain access to additional area codes of data during the second six months of the annual period, the person must first pay $15 for each additional area code of data not initially selected. The payment of the additional fee will permit the person to

access the additional area codes of data for the remainder of the annual period.

(e) Access to the National Do Not Call Registry is limited to telemarketers, sellers, others engaged in or causing others to engage in telephone calls to consumers, service providers acting on behalf of such persons, and any government agency that has law enforcement authority. Prior to accessing the National Do Not Call Registry, a person must provide the identifying information required by the operator of the registry to collect the fee, and must certify, under penalty of law, that the person is accessing the registry solely to comply with the provisions of this Rule or to otherwise prevent telephone calls to telephone numbers on the registry. If the person is accessing the registry on behalf of sellers, that person also must identify each of the sellers on whose behalf it is accessing the registry, must provide each seller's unique account number for access to the national registry, and must certify, under penalty of law, that the sellers will be using the information gathered from the registry solely to comply with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on the registry.

[68 FR 45144, July 31, 2003]

## § 310.9 Severability.

The provisions of this Rule are separate and severable from one another. If any provision is stayed or determined to be invalid, it is the Commission's intention that the remaining provisions shall continue in effect.





3–29–04
Vol. 69    No. 60

Monday
Mar. 29, 2004

United States
Government
Printing Office

SUPERINTENDENT
OF DOCUMENTS
Washington DC 20402

OFFICIAL BUSINESS
Penalty for Private Use, $300

PERIODICALS
Postage and Fees Paid
U.S. Government Printing Office
(ISSN 0097–6326)

*********************5-DIGIT  20580
A  FR      FEDTR630F FTC        F
FED  TRD  COMM
BRY
600 PENNSYLVANIA  AVE  NW  H630
WASHINGTON      DC   20580

Nevertheless, the Commission believes that, to the extent that this amendment has an economic effect on small business, the Commission has adopted an approach that minimizes the impact to ensure that it is not substantial, while fulfilling the mandate of the Appropriations Act that all businesses obtain data from the National Do Not Call Registry on a monthly basis.

As discussed above in detail, based on the record, the Commission has extended the interval at which businesses must access Registry data and purge their calling lists of numbers contained on the Registry to thirty-one (31) days, the maximum allowable pursuant to the Appropriations Act mandate. And, in recognition of the need for businesses, particularly small businesses, to modify their procedures and systems to accommodate this amendment, the Commission has set the effective date for this amended Rule provision as January 1, 2005, allowing more than nine months time for necessary preparations.

*4. Description of the Projected Reporting, Recordkeeping, and Other Compliance Requirements of the Final Rule, Including an Estimate of the Classes of Small Entities That Will Be Subject to the Requirement of Obtaining Data From the National Do Not Call Registry Every Thirty (30) Days and the Type of Professional Skills That Will Be Necessary To Comply.*

As discussed in the NPRM, this amendment does not impose any new, or affect any existing, reporting, disclosure, or specific recordkeeping requirements within the meaning of the Paperwork Reduction Act. The Commission further posited in the NPRM that it did not "believe that the modification requiring sellers and telemarketers to obtain data from the National Registry at a more frequent interval will create a significant burden on sellers or telemarketers that have already established systems to comply with the requirement in the existing TSR that requires accessing the Registry database on a quarterly basis." But, the Commission recognized that "[t]here will likely be additional costs" * * * incurred to access the Registry every thirty days (effectively twelve (12) times per year) versus the current requirement

of every three months (effectively four (4) times per year)."[41]

Many commenters argued that the amended Rule provision will be burdensome on businesses, particularly small businesses. NADA noted that "dealers and other small businesses can expect a corresponding increase in the personnel costs necessary to download the data and perform the scrub. Because small businesses may lack available personnel to perform this additional function, they may find it necessary to outsource the function to a vendor," which would further increase costs associated with the more frequent scrub requirement.[42] However, as described below, in response to Question 5, the Commission has taken steps to minimize the impact of the amended Rule provision on small businesses, to the extent possible while still effectuating the mandate of the Appropriations Act.

*5. Steps the Agency Has Taken To Minimize Any Significant Economic Impact on Small Entities, Consistent With the Stated Objectives of the Appropriations Act, Including the Factual, Policy, and Legal Reasons For Selecting the Alternative Finally Adopted, and Why Each of the Significant Alternatives Was Rejected.*

As noted in the NPRM, the Appropriations Act of 2004 provides the Commission no discretion in the matter of whether to amend the TSR." The Commission, however, included in the NPRM a request for factual information about the amount of time it will take for "sellers and telemarketers, including small businesses, to modify their business procedures and systems to be able to comply with the amended provision." Based on the record, the Commission has determined to set the effective date for this amendment as January 1, 2005. This time frame will, as noted above, provide businesses,

especially small businesses,[43] adequate time to modify their systems and procedures to comply with the amended provision. In addition, the Commission has extended the interval at which businesses must access Registry data and purge their calling lists of numbers contained on the Registry to thirty-one (31) days, the maximum allowable pursuant to the Appropriations Act mandate.

Thus, while the Commission considered more burdensome alternatives (*i.e.*, choosing an interval of thirty (30), rather than thirty-one (31) days, the Commission rejected those alternatives, as discussed above, in favor of a regulatory approach that was the least burdensome to all regulated entities, including small entities, if any.

## IX. Amended Rule

■ Accordingly, the Commission amends title 16, Code of Federal Regulations, as follows:

## PART 310—TELEMARKETING SALES RULE

■ 1. The authority citation for part 310 continues to read as follows:

**Authority:** 15 U.S.C. 6101–6108.

■ 2. Amend § 310.4 by revising paragraph (b)(3)(iv) to read as follows:

### § 310.4 Abusive telemarketing acts or practices.

* * * * *

(b) * * *

(iv) The seller or a telemarketer uses a process to prevent telemarketing to any telephone number on any list established pursuant to § 310.4(b)(3)(iii) or 310.4(b)(1)(iii)(B), employing a version of the "do-not-call" registry obtained from the Commission no more than thirty-one (31) days prior to the date any call is made, and maintains records documenting this process;

* * * * *

By direction of the Commission.
**Donald S. Clark,**
*Secretary.*

**Note:** This appendix will not appear in the Code of Federal Regulations.

---

telemarketing does not distinguish between those entities that conduct exempt calling, such as survey calling, those that receive inbound calls, and those that conduct outbound calling campaigns. Moreover, sellers who act as their own telemarketers are not accounted for in the Census data).

[41] Based on data obtained during the TSR amendment finalized in 2003, the Commission estimated that "the cost of accessing the National Do Not Call Registry to purge the numbers it contains from a company's calling list (separate from the fee paid to obtain the list) is around $100. Given this estimate, sellers and telemarketers seeking to comply with the proposed rule modification would pay $1200 per year ($100 per scrub x 12 scrubs per year) rather than $400 per year ($100 per scrub x 4 scrubs per year)."

[42] NADA at-2 (recommending a January 1, 2005 effective date). *See also* Ziskind at 1 (noting that the more frequent scrub interval will "add an additional burden to REALTORS," and cost "us time and money"); NRF at 2 ("for smaller businesses, in particular, the extra hours they may be forced to spend each month in order to prepare to contact their customers is subtracted from the time they could spend serving those customers").

[43] The Commission notes that the TSR applies only to interstate telemarketing campaigns, and thus, is likely to exempt numerous small business entities that only conduct telemarketing within a single state. The FCC, which regulates intrastate calling, while not mandated by the Appropriations Act to modify its telemarketing rules, is considering a change to bring them in line with the TSR. *See* "FCC Seeks Comment on Rules to Eliminate Spam From Mobile Phones; Commission Also Asks for Comments on Possible 'Safe Harbor' for Telemarketing Calls to Mobile Phones," Mar. 11, 2004 (containing reference to the FCC's impending NPRM on a thirty (30) day scrub interval).



7–30–04
Vol. 69    No. 146

**Friday**
**July 30, 2004**

# Federal Register

United States
Government
Printing Office
SUPERINTENDENT
OF DOCUMENTS
Washington, DC 20402

OFFICIAL BUSINESS
Penalty for Private Use, $300

PERIODICALS
Postage and Fees Paid
U.S. Government Printing Office
(ISSN 0097–6326)

*****************5-DIGIT   20580
A FR   FEDTR630F FTC        F
FED TRD COMM
LBRY
600 PENNSYLVANIA AVE NW  H630
WASHINGTON   DC  20580

xpired, it will be prompted to renew he subscription at that time.

I. Paperwork Reduction Act

The proposed revised fee provision loes not create any new recordkeeping, sporting, or third-party disclosure equirements. However, the Commission now has data based on the operation of the National Do Not Call Registry indicating that an estimated 55,000 entities will access the registry each year. The Commission's staff has increased its estimate of the total paperwork burden accordingly, and has notified the Office of Management and Budget ("OMB") of the resulting minor change in burden hours to the existing clearance, OMB Control No. 3084–0097.

II. Regulatory Flexibility Act

The Regulatory Flexibility Act "RFA"), 5 U.S.C. 601 et seq., requires the agency to provide an Initial Regulatory Flexibility Analysis "IRFA") with its proposed rule, and a Final Regulatory Flexibility Analysis "FRFA") with its final rule, unless the agency certifies that the rule will not have a significant economic impact on a substantial number of small entities. As explained in the Revised Fee NPRM and this Statement, the Commission loes not expect that its Final Amended Fee Rule will have the threshold impact on small entities. As discussed above, his Amended Rule specifically charges no fee for access to data included in the registry from one to five area codes. As a result, the Commission anticipates that many small businesses will be able to access the national registry without having to pay any annual fee. Thus, it s unlikely that there will be a significant burden on small businesses resulting from the adoption of the proposed revised fees. Nonetheless, the Commission published an IRFA with he Revised Fee NPRM, and is also publishing a FRFA with its Final Amended Fee Rule below, in the interest of further explaining its determination, even though the Commission continues to believe that it is not required to publish such analyses.

A. Reasons for Consideration of Agency Action

The Amended Final Fee Rule has een considered and adopted pursuant to the requirements of the Implementation Act and the 2004 Appropriations Act, which authorize the Commission to collect fees sufficient to implement and enforce the "do-not-call" provisions of the Amended TSR.

B. Statement of Objectives and Legal Basis

As explained above, the objective of the Amended Final Fee Rule is to collect sufficient fees from entities that must access the National Do Not Call Registry. The legal authority for this Rule is the 2004 Appropriations Act, the Implementation Act, and the Telemarketing Act.

C. Description of Small Entities to Which the Rule Will Apply

The Small Business Administration has determined that "telemarketing bureaus" with $6 million or less in annual receipts qualify as small businesses.[42] Similar standards, i.e., $6 million or less in annual receipts, apply for many retail businesses that may be "sellers" and subject to the revised fee provisions set forth in this Amended Final Rule. In addition, there may be other types of businesses, other than retail establishments, that would be "sellers" subject to this rule.

As described in Section IV, above, to date more than 57,000 entities have accessed five or fewer area codes of data from the national registry at no charge. While not all of these entities may qualify as small businesses, and some small businesses may be required to purchase access to more than five area codes of data, the Commission believes that this is the best estimate of the number of small entities that will be subject to this Amended Final Rule. In any event, as explained elsewhere in this Statement, the Commission believes that, to the extent the Amended Final Fee Rule has an economic impact on small business, the Commission has adopted an approach that minimizes that impact to ensure that it is not substantial, while fulfilling the legal mandate of the Implementation Act and 2004 Appropriations Act to ensure that the telemarketing industry supports the cost of the National Do Not Call Registry.

D. Projected Reporting, Recordkeeping and Other Compliance Requirements

The information collection activities at issue in this Amended Final Rule consist principally of the requirement that firms, regardless of size, that access the national registry submit minimal identifying and payment information, which is necessary for the agency to collect the required fees. The cost impact of that requirement and the labor or professional expertise required for compliance with that requirement were discussed in Section V of the Revised Fee NPRM.[43]

As for compliance requirements, small and large entities subject to the Amended Fee Rule will pay the same fees to obtain access to the National Do Not Call Registry in order to reconcile their calling lists with the phone numbers maintained in the national registry. As noted earlier, however, compliance costs for small entities are not anticipated to have a significant impact on small entities, to the extent the Commission believes that compliance costs for those entities will be largely minimized by their ability to obtain data for up to five area codes at no charge.

E. Duplication With Other Federal Rules

None.

F. Discussion of Significant Alternatives

The Commission discussed the proposed alternatives in Section III, above.

List of Subjects in 16 CFR Part 310

Telemarketing, Trade practices.

VII. Final Rule

■ Accordingly, for the reasons set forth above, the Commission hereby amends part 310 of title 16 of the Code of Federal Regulations as follows:

PART 310—TELEMARKETING SALES RULE

■ 1. The authority citation for part 310 continues to read as follows:

Authority: 15 U.S.C. 6101–6108.

■ 2. Revise § 310.8(c) and (d) to read as follows:

§ 310.8   Fee for access to the National Do Not Call Registry.

* * * * *

(c) The annual fee, which must be paid by any person prior to obtaining access to the National Do Not Call Registry, is $40 per area code of data accessed, up to a maximum of $11,000; provided, however, that there shall be no charge for the first five area codes of data accessed by any person, and provided further, that there shall be no charge to any person engaging in or causing others to engage in outbound telephone calls to consumers and who is accessing the National Do Not Call Registry without being required under this Rule, 47 CFR 64.1200, or any other federal law. Any person accessing the National Do Not Call Registry may not participate in any arrangement to share the cost of accessing the registry,

---

[42] See 13 CFR 121.201.

[43] See 69 FR at 23704.

including any arrangement with any telemarketer or service provider to divide the costs to access the registry among various clients of that telemarketer or service provider.

(d) After a person, either directly or through another person, pays the fees set forth in § 310.8(c), the person will be provided a unique account number which will allow that person to access the registry data for the selected area codes at any time for twelve months following the first day of the month in which the person paid the fee ("the annual period"). To obtain access to additional area codes of data during the first six months of the annual period, the person must first pay $40 for each additional area code of data not initially selected. To obtain access to additional area codes of data during the second six months of the annual period, the person must first pay $20 for each additional area code of data not initially selected. The payment of the additional fee will permit the person to access the additional area codes of data for the remainder of the annual period.

\* \* \* \* \*

By direction of the Commission.

Donald S. Clark,

*Secretary.*

Note: The following appendix will not appear in the Code of Federal Regulations.

**Appendix—List of Acronyms for Commenters to the TSR Revised Fee Rule Proposal**

| Commenter | Acronym |
|---|---|
| American Insurance Association | AIA |
| American Resort Development Association. | ARDA |
| American Teleservices Association. | ATA |
| America's Community Bankers | ACB |
| Bernard, Ted | TB |
| California Association of Realtors | CAR |
| Cendant Corporation | Cendant |
| Comerica Inc. | Comerica |
| Direct Marketing Association, Inc. | DMA |
| Fried, Dorigen | DF |
| Hedke, Reasha | RH |
| Heinemann, Mike | MH |
| Hughes, Roberta | RH2 |
| Infovision Management Corporation, Inc. | IMC |
| Magazine Publishers of America | MPA |
| Marrou, Marianne | MM |
| Midwest Readers Service | MRS |
| National Association of Realtors | NAR |
| National Automobile Dealers Association. | NADA |
| National Multi Housing Council | NMHC |
| National Newspaper Association | NNA |
| ORC ProTel | OPT |
| RELO | RELO |
| Stonebridge Life Insurance Company. | SLIC |

| Commenter | Acronym |
|---|---|
| TCIM Services | TCIM |

[FR Doc. 04–17330 Filed 7–29–04; 8:45 am]

BILLING CODE 6750–01–P

# SOCIAL SECURITY ADMINISTRATION

## 20 CFR Part 408

[Regulations No. 8]

RIN 0960–AF72

**Special Benefits for Certain World War II Veterans; Reporting Requirements, Suspension and Termination Events, Overpayments and Underpayments, Administrative Review Process, Claimant Representation, and Federal Administration of State Recognition Payments; Corrections**

**AGENCY:** Social Security Administration.

**ACTION:** Correcting amendments.

**SUMMARY:** The Social Security Administration published a document in the Federal Register on May 10, 2004 (69 FR 25950), revising our rules dealing with claims for Special Veterans Benefits under title VIII of the Social Security Act. That document incorrectly designated the final four paragraphs in § 408.1003. This document corrects the final regulations by redesignating those paragraphs.

**DATES:** Effective on June 9, 2004.

**FOR FURTHER INFORMATION CONTACT:** Robert J. Augustine, Social Insurance Specialist, Office of Regulations, 100 Altmeyer Building, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235–6401, (410) 965–0020, or TTY (410) 966–5609. For information on eligibility or filing for benefits, call our national toll-free numbers, 1–800–772–1213 or TTY 1–800–325–0778, or visit our Internet Web site, Social Security Online, at *http:// www.socialsecurity.gov.*

**SUPPLEMENTARY INFORMATION:** The final rules that are the subject of this correction set forth six new subparts in part 408 (Special Benefits for Certain World War II Veterans). The six new subparts dealt with the following topics: the events you must report to us after you apply for SVB, the circumstances that will affect your SVB entitlement, how we handle overpayments and underpayments under the SVB program, how the administrative review process works, your right to appoint someone to represent you in your dealings with us, and administration agreements we may enter into with a State under which we

will pay supplemental recognition payments to you on the State's behalf. On page 25963 of the document we published in the Federal Register of May 10, 2004, we incorrectly designated the final four paragraphs in § 408.1003 as paragraphs (e) through (h).

List of Subjects in 20 CFR Part 408

Administrative practice and procedure, Aged, Reporting and recordkeeping requirements, Social security, Special veterans benefits, Veterans.

■ Accordingly, 20 CFR part 408 is corrected by making the following correcting amendment:

**PART 408—SPECIAL BENEFITS FOR CERTAIN WORLD WAR II VETERANS**

■ 1. The authority citation for subpart J continues to read as follows:

**Authority:** Secs. 702(a)(5) and 809 of the Social Security Act (42 U.S.C. 902(a)(5) and 1009).

§ 408.1003 [Amended]

■ 2. In § 408.1003, redesignate the final four paragraphs as paragraphs (g) through (j).

Martin Sussman,

*Regulations Officer, Social Security Administration.*

[FR Doc. 04–17332 Filed 7–29–04; 8:45 am]

BILLING CODE 4191–03–P

# DEPARTMENT OF THE INTERIOR

## Bureau of Indian Affairs

## 25 CFR Part 170

**Indian Reservation Roads Program**

**AGENCY:** Bureau of Indian Affairs, Interior.

**ACTION:** Notice of public information and education meetings on Indian Reservation Roads Program final rule.

**SUMMARY:** We are announcing public meetings to provide information and education on the contents of each subpart of the final rule for the Indian Reservation Roads Program. The final rule is the result of negotiated rulemaking between tribal and Federal representatives under the Transportation Equity Act for 21st Century. The final rule establishes policies and procedures governing the Indian Reservation Roads Program and provides guidance for planning, designing, constructing, and maintaining transportation facilities. It also expands transportation activities available to tribes and tribal